The LANSALL COMPANY and its Subsidiary Companies, Lansall Corporation and Coordinated Services, Inc., Plaintiffs,

v.

The UNITED STATES of America, Defendant.

No. 78 Civ. 1741.

United States District Court, S. D. New York.

April 29, 1981.

---

**5.** *See* note 3, *supra.*

Lawrence E. Brinn, New York City, for plaintiffs; Lawrence E. Brinn, Stephen V. Staehle, New York City, of counsel.

John S. Martin, Jr., U. S. Atty. for the Southern District of New York, New York City, for defendant; Janis P. Farrell, Asst. U. S. Atty., New York City, of counsel.

## OPINION

OWEN, District Judge.

This is a bench trial on stipulated facts. Plaintiffs, The Lansall Company, and its subsidiaries, Lansall Corporation and Coordinated Services, Inc., all of which filed a consolidated tax return for the year 1968, seek a tax refund for that year.

In 1962, Lansall Corporation (hereinafter "Lansall I"), whose assets consisted of securities listed on the major exchanges, was owned equally by two charitable foundations, each consisting of members of the Baird family. One was the Winfield Baird Foundation ("Winfield") and the other was the David, Josephine and Winfield Baird Foundation ("David"). At the end of 1962, The Lansall *Company* ("Lansall II") was organized and issued 200,000 shares. Fifty percent of the shares were purchased by Winfield for $100,000 and the other fifty percent of the shares were purchased by one Joseph A. Patrick for $100,000.[1] Thereafter, Lansall II purchased all the stock of Lansall I from Winfield and David by issuing $5,333,000 in subordinated promissory notes due April, 1978, (hereinafter "the promissory notes"). The promissory notes provide for interest at a rate of four percent per annum with the payment of interest having been deferred until 1967. All parties concede that the promissory notes are unconditional, legally enforceable promises by Lansall II to pay the holder a sum certain on a specified date in the future at a fixed rate of interest.

Following the sale of their stock in Lansall I to Lansall II, Winfield and David gave all of said promissory notes to various charities, and Winfield gave its entire fifty percent stock ownership in Lansall II to various charities as well. It should be noted that Winfield's gifts of stock to charities were not, however, co-extensive with its gifts of the notes. Winfield gave some of its stock in Lansall I to charities to which it had given notes, and it gave some of its stock to charities to which David had given notes. Winfield also gave some of its stock to charities that received no notes at all.

It was not until 1968, when Lansall II began making interest payments on the promissory notes, that the instant dispute arose. Lansall II, having paid interest in 1967 to all the charities that had received the notes, sought an income tax deduction for the amounts paid as interest on the promissory notes. The Internal Revenue Service allowed the interest deductions for interest paid to those note-holding charities which had received *no* stock from Winfield and disallowed the deduction for interest payments to all note-holding charities which had received stock, regardless of whether their notes had been a gift from Winfield or David. The disallowed interest payments amounted to some $145,341. In explaining

---

1. Joseph A. Patrick, who, one may surmise, came in as a manager of the Lansall ventures, is a partner of David Baird in the brokerage company of Baird & Company.

its decision, the IRS gave the following reasons: (1) that Lansall II had a debt-to-equity ratio of 26 to 1; (2) that thirty-eight and one-half percent of the promissory notes were owed by shareholder-charities; (3) that the promissory notes were subordinated to debts owed to general creditors and (4) that no dividends had been paid by Lansall II to its shareholders during the years in question. Needless to say, Lansall II took the contrary position arguing that these interest payments were fully deductible under the following well-established criteria: (1) that the promissory notes represented a conceded indebtedness of the company; (2) that the promissory notes carried a fixed interest; and (3) that the interest payments were paid within the tax year. Plaintiffs observe, not without some analytical tug if not legal significance, that IRS permitted a deduction for interest payments made to charities holding identical notes, but which had *not* received stock.

The resolution of the issue before me turns upon (1) the characterization of both the acquisition of Lansall I by Lansall II and the subsequent distribution of the Lansall II stock and promissory notes to the foundations in question; and (2) a determination as to the appropriateness of applying to this unusual situation certain of the traditional criteria used in assessing the deductibility of interest payments made to shareholders of closely-held corporations. Normally, the following factors have been considered as relevant in determining whether something is a genuine indebtedness upon which deductible interest is paid, or is the equivalent of capital for which the contributors can receive only dividends which are not deductible to the corporation. *Wilbur Security Co. v. Commissioner*, 279 F.2d 657, 662 (9th Cir. 1960):

(1) The name given to the certificates evidencing the indebtedness. (2) The presence or absence of a maturity date. (3) The source of the payments. (4) The right to enforce the payment of principal and interest. (5) Participation in management. (6) A status equal to or inferior to that of regular corporate creditors. (7) The intent of the parties. (8) Capitalization. (9) Identity of interest between creditor and stockholder. (10) Payments of interest only out of dividends. (11) Whether or not the corporation could have obtained loans from outside lending institutions.

*In re Wynnefield Heights, Inc.*, 25 TCM 959 (1966).

The question of whether payments on the Lansall II promissory notes are debt or equity is one of fact to be decided on the basis of the particular circumstances involved in each case. *See John Kelley Co. v. Commissioner*, 326 U.S. 521, 66 S.Ct. 299, 90 L.Ed. 278. No one factor is likely to be conclusive.

After having assessed all of the factors set forth above, I conclude that the Lansall II promissory notes are instruments of debt and not equity, and that the deduction taken by the company for payment of interest thereunder should have been allowed. The IRS, as mentioned earlier, has conceded that these are valid, enforceable obligations bearing a fixed interest rate and a fixed maturity date, and that the noteholders have an absolute right to enforce the payment of principal and interest. In my view, the other critical factor in assessing the *bona fides* of this unusual situation is the intention of the parties to these transactions. It seems clear to me that, whatever else is true, it was the intention of the donors of the notes, Winfield and David, to give the various charities enforceable promissory notes—not a disguised equity position—in Lansall II. It does not seem to me that it was Winfield's intention, in selecting the donees of its Lansall II stock, to cause Lansall II to make surreptitious dividend payments in the form of interest payments on the promissory notes. Needless to say, the donee-charities played no part in Winfield's decision to give stock or notes or both to any particular recipient. And Lansall II, the taxpayer whose interest deductions are the subject of this litigation, also took no part in Winfield's choice of donees of its stock or notes. This is not a situation in which Lansall II caused Winfield so to structure its financial matters that non-de-

ductible interest payments to Winfield would be suddenly transformed into deductible interest payments in the hands of the donee-charities. Contrary to the position taken by the IRS, this is not the typical situation most often found in the closely-held, family corporation, where the company's finances are so structured as to permit family members to receive dividends in the guise of interest payments while the family business thereby generates income tax deductions. *See, e. g., Kelley v. Commissioner, supra.*

This conclusion is reenforced by a review of the factors that the IRS relied upon making its determination. First, turning to the factors that IRS *did* consider, I note that the mere fact that a promissory note is subordinated to other obligations owed to general creditors does not alter the fact that these notes have fixed and enforceable provisions for the payment of principal and interest. Next, the fact that Lansall II paid no dividends to shareholders in the years in question, while a factor to be considered, is not of sufficient weight to justify the IRS's view that fixed payments on these notes should be regarded as dividends. This is especially true given what I perceived to be the intent of the parties and the sharply disproportionate ratio of ownership between stocks and bonds. *See infra.*

Two remaining factors, both of which were relied upon by the IRS, should be considered: (1) the fact that Lansall II had a debt-to-equity ratio of 26 to 1, and (2) that thirty-eight percent of shareholders of Lansall II owned 55.13 percent of the promissory notes. In light of *Leach Corp. v. Commissioner,* 30 T.C. 563 (1958), I conclude, however, that these factors, even when taken together, are not of sufficient weight to support the IRS's ultimate conclusion. Indeed, in *Leach, supra,* the court held that the disproportionate ratio of stock and bond ownership neutralized the inference that otherwise might be drawn from the high ratio of debt to equity. The court stated as follows:

"The sharply disproportionate ratio between ownership of stock and bonds goes far to overcome the high debt-to-equity ratio here. The bondholders owned only some 48 percent of the stock. The situation would have been quite different had all the stock and bonds owned by the same interest in substantially the same proportion. This is not to say that such proportionate ownership is indispensable to the Government's position, for it is not (Cf. *Colony, Inc.,* 26 T.C. 30, 43, affirmed on another issue, 244 F.2d 74 A.A. 6); but where the disproportion is so substantial and where the parties are so completely unrelated as the Ohrstrom Group and the Clients of the English banking houses, such disproportion tends to neutralize the inference that might otherwise be drawn from the high debt-to-equity ratio."
*Id.* at 579.

Not unlike *Leach,* the position taken by the IRS here would have had more force had all the charities been given both notes and stock in roughly the same proportions. Such an arrangement would have permitted the donee-charities as shareholders to continue to share in any increase in the value of the Lansall II stock while at the same time continuing to receive roughly similar share-for-share payments in the guise of interest payments with the benefit of deductibility thereof to the corporation. Such payments, while denominated as interest, should be more realistically viewed as dividends. This is not, however, the case here. Of those charities to which both David and Winfield gave promissory notes, only some received stock from Winfield. And, as observed earlier, some of those charities that received stock from Winfield received promissory notes from David. In addition, Winfield gave some of its stock to charities that had received no notes at all from either donor.

For the reasons set forth above, I conclude that the income-tax deductions taken by Lansall II for interest payments on the promissory notes held by shareholder-charities, which deductions heretofore were disallowed, should be allowed by the IRS. Plaintiffs should have judgment accordingly for the amount of the taxes overpaid as

reason of the said disallowance with interest.

Submit appropriate judgment on reasonable notice.

So ordered.